# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| **WILLIAM R. SOREY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | )    **Case No. 3:11-cv-0859** |
| | )    **Judge Trauger** |
| **v.** | ) |
| | ) |
| **YRC, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM

Pending before the court is the defendant's Motion to Dismiss Plaintiff's Amended

Complaint (Docket No. 27), to which the plaintiff has responded (Docket No. 29), and the

defendant has filed a reply (Docket No. 30). For the reasons discussed herein, the defendant's

motion will be granted in part and denied in part.

## BACKGROUND

This action involves discrimination claims brought under the Rehabilitation Act of 1973

("Rehabilitation Act") and the Tennessee Human Rights Act ("THRA"). The plaintiff, a disabled

employee of the defendant, YRC, Inc.[1] ("YRC"), began his employment as a truck driver in

---

[1]  YRC was formed in 2003 after Yellow Transportation, Inc. ("Yellow Transportation")
purchased Roadway Corporation ("Roadway"). (Docket No. 28, at 2.) Yellow Transportation
and Roadway later merged operations in March of 2009. (Docket No. 22, Ex. A ¶ 6; Docket No.
28, at 2.) When plaintiff began working in 1971, he was employed by Yellow Freight System,
the corporate predecessor of Yellow Transportation. (Docket No. 22, Ex. A ¶ 5.)

1971.[2]  In this action, he alleges that YRC failed to accommodate his disability and retaliated

against him for filing a prior lawsuit against the company.

The plaintiff's failure to accommodate claim arises out of the defendant's repeated denials

of his requests for a dedicated Volvo truck.  The plaintiff requested the Volvo truck as an

accommodation for his disability because it had standardized steps that allowed him to more

easily access the truck cabin.  While these trucks were "readily available" to YRC, it repeatedly

refused to provide one to the plaintiff, despite receiving communications from his physician

stating that the requested accommodation was necessary.[3]  These requests for accommodation

began sometime after March of 2009 and continued up until February of 2011, when the plaintiff

took a medical leave from his employment.

The plaintiff also alleges that he was retaliated against for bringing a lawsuit against

YRC.  The lawsuit arose out of an accident that severely injured the plaintiff while he was on his

way to work.[4]  Although he was cleared to return to his job several months after the accident,

---

[2]  Unless otherwise noted, the allegations are drawn from the plaintiff's Amended
Complaint. (Docket No. 22, Ex A.)  The plaintiff had previously moved to amend his Complaint
on December 2, 2011, attaching his proposed Amended Complaint as Exhibit A.  (Docket No.
22.)  In a Memorandum and Order entered on December 14, 2010, the court granted that motion.
(Docket No. 23.)  The clerk will be ordered to file the Amended Complaint attached to the
motion.

[3]  The plaintiff does not elaborate as to precisely how the Volvo trucks were readily
available to the defendant.  Indeed, it is unclear whether YRC owned extra Volvo trucks from
which it could accommodate the plaintiff's request or if it would otherwise have to purchase
such a truck for the plaintiff.

[4] The Amended Complaint is unclear as to when the accident actually occurred.
Although the plaintiff alleges that the accident occurred in 1985, he also alleges that he was
cleared to return to work several months later in 1995.  Given that the Amended Complaint
further alleges that his lawsuit seeking to compel YRC to allow him to return to work concluded
in 1998, the court will assume, for the purposes of this motion, that the accident occurred in
1995.

YRC did not allow the plaintiff to return. The plaintiff then brought a lawsuit in federal court

against YRC seeking to compel the company to return him to work. This lawsuit concluded in

1998, and according to the plaintiff, YRC has since engaged in retaliatory conduct.[5]

This conduct began five years later at approximately the end of 2003, when YRC sent a

letter to a hotel where the plaintiff was staying that denied his request for a handicap accessible

room.[6] Over one year after this incident, in March of 2005, the plaintiff alleges that YRC

purposefully failed to file a "continuation for loss of time" form with his union while he was

away from work for medical reasons. As a result of this failure, the union did not pay for the

plaintiff's medical insurance, and the plaintiff subsequently lost coverage.

Four years following this event, in March of 2009, the plaintiff reached the mark of

having safely driven 3,000,000 miles for the company. YRC recognized the plaintiff's

attainment of this milestone by naming him to the 2009 Driver Hall of Fame. Nonetheless,

contrary to its own consistent historical practice, YRC failed to award the plaintiff a dedicated

truck after he attained the 3,000,000 mile mark and rejected the plaintiff's subsequent requests

for such a vehicle.[7] Approximately five to six months later, YRC discontinued a run that the

plaintiff had driven for thirty years immediately after he had prevailed in a grievance filed in

---

[5] The Amended Complaint does not describe the outcome of the prior federal court
litigation. Although the plaintiff returned to work for the defendant after the conclusion of the
lawsuit, it is unclear precisely when the plaintiff returned and whether the defendant was ordered
to put the plaintiff back to work or, if instead, it voluntarily allowed him to return.

[6] The plaintiff also alleges, upon information and belief, that YRC requested the hotel to
remove him from the handicap accessible room in which he was staying.

[7] The plaintiff allegedly requested a Volvo truck not only as an accommodation for his
disability, but also as an award to which he was entitled for reaching the 3,000,000 mile mark.
Again, it is an open question as to whether the plaintiff requested that YRC provide him with a
Volvo truck it already owned or, if instead, he requested that it purchase one for him.

August of 2009 against the company pertaining to his medical leave. The run had allowed the

plaintiff to be home for church on Sundays, something YRC management knew was important to

the plaintiff.

More than one year later, at the beginning of 2011, YRC posted the number of miles

safely driven in 2010 for all of its drivers. However, in doing so, the company failed to

accurately record the number of compensable miles the plaintiff had safely driven for that year.

This failure denied the plaintiff credit toward reaching the miles safely driven award. Several

months after this event, on July 2, 2011, the plaintiff learned that YRC had failed to pay a 2009

ticket he received in Georgia for his truck being improperly loaded. According to the plaintiff, he

does not load his truck, and the payment of the ticket was YRC's responsibility. YRC failed to

pay the plaintiff's ticket notwithstanding the fact that he had reported the ticket to the company

pursuant to its policy. On the same date he learned that the defendant failed to pay his ticket, he

also learned that his driver's license had been suspended in Georgia for approximately one and

one-half years (presumably, because his ticket remained unpaid).[8]

The plaintiff commenced this action on September 12, 2011, alleging claims for failure to

accommodate and retaliation pursuant to the Rehabilitation Act, 29 U.S.C. § 701, *et seq.,* and the

THRA, Tenn. Code Ann. § 4-21-101 *et seq.* (2011). (Docket No. 1) On November 21, 2011, the

defendant filed its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),

arguing that the plaintiff's Complaint should be dismissed because all of his claims were time-

---

[8] The plaintiff also alleges that he was never issued a fuel card by Yellow Freight System
or Yellow Transportation until March of 2009, when Yellow Transportation and Roadway
merged. Yet, it is not clear from the allegations in the Amended Complaint precisely when the
plaintiff was denied a fuel card.

barred under the applicable statutes of limitation.  (Docket No. 17.)  The plaintiff responded to

the defendant's motion on December 2, 2011.  (Docket No. 21.)  On the same date, the plaintiff

filed a motion seeking leave to amend his Complaint.  (Docket No. 22.)  In a Memorandum and

Order entered on December 14, 2011, the court granted the plaintiff's motion to amend and

denied the defendant's motion to dismiss as moot.  (Docket No. 23.)  The defendant subsequently

filed the pending motion on December 19, 2011.  (Docket No. 27.)

**ANALYSIS**

The defendant has moved to dismiss the plaintiff's Amended Complaint on the ground

that it fails to state claims upon which relief can be granted pursuant to Federal Rule of Civil

Procedure 12(b)(6).

**I.      Standard of Review**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court

will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as

true, and draw all reasonable inferences in favor of the plaintiff."  *Directv, Inc. v. Treesh*, 487

F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002).  The

Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of

the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds

upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)

(quoting Fed. R. Civ. P. 8(a)(2)).  The court must determine whether "the claimant is entitled to

offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts

alleged.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)

(quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009).

## II.    The Defendant's Motion

YRC contends that all of the claims asserted in the Amended Complaint must be dismissed because they are time-barred under the applicable statutes of limitation. In particular, the defendant asserts that claims brought under the Rehabilitation Act and the THRA carry a one-year statute of limitations. Because the alleged conduct providing the basis for the plaintiff's claims occurred outside the limitations period, the defendant contends that dismissal is required.

### A.    Rehabilitation Act

#### (1)    Failure to Accommodate

Although the Rehabilitation Act does not contain its own statute of limitations, the Sixth Circuit has held that state statutes of limitation governing personal injury actions also govern claims brought under the Rehabilitation Act. *Southerland v. Hardaway Mgmt. Co.*, 41 F.3d 250, 254-55 (6th Cir. 1994). In Tennessee, the statute of limitations for personal injury actions is one year. *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986); Tenn. Code Ann. § 28-3-104(a) (2000).

6

The court notes at the outset that a denial of a request for accommodation is a discrete act.[9]  *See Horton v. Potter*, 369 F.3d 906, 910 (6th Cir. 2004); *see also Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 129 (1st Cir. 2009) ("If the request [for an accommodation] is refused, the refusal is a discrete discriminatory act triggering the statutory limitations period.") (internal quotations and citations omitted); *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1210 (10th Cir. 2007) (noting that employer's denial of request for accommodation constituted a discrete act); *Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 368-69 (D.C. Cir. 2007) (same); *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134-35 (2d Cir. 2003) (concluding that employer's rejection of proposed accommodation for religious practices is a "single completed action when taken" and thus constitutes a discrete act).  As the Supreme Court stated in *Nat'l R.R. Passenger Corp. v. Morgan*,  536 U.S. 101 (2002), a discrete act occurs on the day it happens, and such acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  536 U.S. at 110-13.  Since the plaintiff initiated this action on September 12, 2011, the court must determine whether the plaintiff has alleged a failure to accommodate claim that arose on or after September 12, 2010.

Having reviewed the allegations of the Amended Complaint, the court finds that the plaintiff has alleged a timely failure to accommodate claim under the Rehabilitation Act.[10]  The

---

[9] Accordingly, the continuing violation doctrine is not applicable.  *Nat'l R.R. Passenger Corp. v. Morgan*,  536 U.S. 101, 114 (2002) (holding that the doctrine does not apply to discrete acts of discrimination); *see also Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003).

[10] The plaintiff also asserts that his failure to accommodate claim is timely under the Lilly Ledbetter Fair Pay Act of 2009, Pub.L. 111-2, 123 Stat. 5(2009) ("the Act"), which covers discrimination in compensation.  *Id.*; *see also Noel v. The Boeing Co.*, 622 F.3d 266, 274 (3d Cir. 2010).  The Act is not applicable here, however, because the plaintiff has only alleged claims for failure to accommodate and retaliation.

Amended Complaint specifically alleges that, beginning sometime after March of 2009, the

defendant repeatedly refused to provide the plaintiff with a Volvo truck as an accommodation for

his disability.  (Docket No. 22, Ex. A ¶¶ 13-17.)  In addition, it alleges that the plaintiff continued

to make these requests for accommodation up until he took medical leave in February of 2011.

(*Id.* ¶ 18.)  Each of these alleged refusals to accommodate constituted a discrete discriminatory

act.  Since the plaintiff alleges that these refusals to provide him with a Volvo truck continued up

until February of 2011, he has stated a timely failure to accommodate claim.  The court notes,

however, that the plaintiff's failure to accommodate claim shall be limited to those specific

requests for the Volvo truck made and denied on or after September 12, 2010, as any requests

made and denied before that date are necessarily time-barred.

YRC nonetheless contends that the plaintiff's claim is still time-barred because he made

his initial request for an accommodation outside the limitations period.  It adds that the plaintiff

cannot save his claim by alleging that he made renewed requests for the same accommodation

within the limitations period.  Neither party has cited any controlling caselaw concerning this

precise issue, and the court has been unable to locate any such authority.

The First Circuit Court of Appeals, however, has addressed and rejected a similar

argument.  In *Tobin v. Liberty Mut. Ins. Co.*, the defendant argued that the plaintiff's claim was

time-barred because the applicable limitations period began to run when it first refused his

request for an accommodation.  533 F.3d at 131.  It further asserted that the plaintiff could not

delay or restart the limitations period by repeating his requests for the same accommodation.  *Id.*

The First Circuit rejected that argument and held that an employee who renews a request for a

specific accommodation "may bring suit based on a new 'discreet' act of discrimination if the

employer again denies his request."  *Id.*  It noted that its factual context where, as here, an

employer commits multiple independently discriminatory acts, is altogether different from those instances where an employee relies on either the ongoing effects of a single discriminatory act or her own efforts to reverse that singular discriminatory act. *Id.* In reaching its conclusion, the court relied on the following language from *Morgan*: "[t]he existence of past acts and the employee's prior knowledge of their occurrence ... does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed." *Id.* (*quoting Morgan*, 536 U.S. at 113). The court finds the *Tobin* court's reasoning persuasive and will accordingly reject the defendant's contention.

### (2) Retaliation

The plaintiff alleges that the defendant retaliated against him for bringing a federal lawsuit against the company after it refused to allow him to return to work following a car accident where he severely injured himself. Like his failure to accommodate claim, the plaintiff's retaliation claim is governed by a one-year statute of limitations. *See Southerland*, 41 F.3d at 254-55. Thus, in order to be timely, the retaliation claim must be based on acts that occurred on or after September 12, 2010.

A review of the Amended Complaint reveals only two alleged retaliatory acts that occurred on or after September 12, 2010. First, sometime in early 2011, when the defendant posted the number of miles safely driven by its drivers for the 2010 year, it failed to accurately record the compensable miles the plaintiff had actually driven.[11] (Docket No. 22, Ex. A ¶ 25.)

---

[11] The plaintiff also asserts that a retaliation claim premised on this alleged conduct is timely under the Lilly Ledbetter Fair Pay Act of 2009. As previously noted, however, since that Act covers discrimination in compensation, it is not applicable to the present case. *See supra* note 10.

Second, on July 2, 2011, the plaintiff first discovered that YRC failed to pay the 2009 traffic ticket he received in Georgia for his truck being improperly loaded and that his driver's license had been suspended there for approximately a year and one-half. (*Id.* ¶ 26.)

Relying on the continuing violation doctrine, the plaintiff attempts to save those retaliatory acts that occurred prior to September 12, 2010. These alleged retaliatory acts included YRC's denial of the plaintiff's request for a handicap accessible room toward the end of 2003, its failure to file a "continuation for loss of time" form with the plaintiff's union while he was off from work in March of 2005, resulting in a loss of medical insurance coverage, its refusal to provide the plaintiff a dedicated truck despite the fact that he had reached the 3,000,000 miles safely driven mark in March of 2009, and its termination of the plaintiff's 30-year run immediately after he successfully prevailed in a grievance filed against the company in August of 2009.[12] (Docket No. 22, Ex. A ¶¶ 13, 19-21, 24.) In *Morgan*, the Supreme Court analyzed the continuing violation doctrine in the Title VII context and held that the doctrine does not apply to discrete acts of discrimination. 536 U.S. at 114; *see also Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003). *Morgan* did hold, however, that the doctrine is viable in the context of hostile work environment claims because, unlike discrete acts that occur on a specific day, such claims are "based on the cumulative effect of individual acts." *Id.* at 115. Here, it cannot reasonably be disputed that the separate incidents of alleged retaliatory conduct that took place prior to September of 2010 each constituted a discrete act. Indeed, the Amended Complaint does not

_____

[12] Although the plaintiff also alleges that the defendant failed to issue him a fuel card in contravention of company practice, the Amended Complaint does not specify when that denial occurred. It does allege, however, that he was issued a fuel card when Yellow Transportation and Roadway merged in March of 2009. (Docket No. 22, Ex. A ¶ 23.) Even assuming that the plaintiff was denied a fuel card immediately preceding the merger, that discrete retaliatory act would nonetheless have occurred outside the one-year limitations period.

even allege a claim of hostile work environment based on the cumulative effect of the defendant's alleged retaliatory acts. The plaintiff's reliance on the continuing violation doctrine is thus unavailing.

YRC contends that the two retaliatory acts that occurred within the limitations period cannot support a retaliation claim because they are too remote in time to the alleged protected activity, that is, the plaintiff's prior lawsuit against the company.[13] The court agrees. As YRC points out, the alleged retaliatory conduct experienced by the plaintiff in 2011 took place approximately 13 years after the conclusion of the plaintiff's federal lawsuit against the company in 1998. Although the court is mindful of the fact that discovery has not yet commenced, it nonetheless finds that this alleged gap in time is too significant to reasonably support the inference that the defendant is liable for retaliation. *See Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 344 (6th Cir. 2001) (noting that three-year gap between protected activity and retaliatory conduct was too significant to give rise to inference of retaliatory motive); *Shapira v. Lockheed Martin Corp.*, 88 F.Supp.2d 813, 834 (E.D. Tenn. 1998) (protected activity occurring ten years prior to plaintiff's termination too remote to support retaliation claim); *Joiner v. Ohio Dep't of Transp.*, 949 F.Supp. 562, 569 (S.D. Ohio 1996) (filing of complaints six years prior to adverse employment action "too tenuous as a matter of law to constitute a causal connection"). Accordingly, the court will dismiss the plaintiff's retaliation claim.

**B.      THRA**

_____

[13] In fact, the defendant asserts that all of the alleged retaliatory conduct is too remote in time with respect to the conclusion of the plaintiff's federal lawsuit in 1998 to support a retaliation claim. In his opposition brief, the plaintiff ignores and effectively concedes this contention. Notwithstanding the plaintiff's apparent concession of the point, the court will address the defendant's argument as it relates to the two instances of retaliatory conduct that occurred within the one-year limitations period.

The plaintiff also alleges that YRC's failure to accommodate and its retaliatory conduct violated the THRA. Although neither party addressed this issue in their briefs, the court notes at the outset that it has previously held that there is no claim for failure to accommodate under applicable Tennessee law.[14] *See Adams v. TRW Automotive U.S. LLC*, No. 3:03-1240, 2005 WL 1862302, at *19-20 (M.D. Tenn. July 22, 2005) (Trauger, J.) (concluding that no such claim exists under Tennessee law after reviewing all available sources concerning the issue); *see also Burress v. City of Franklin*, No. 3:09-cv-0938, 2011 WL 3651275, at *18-19 (M.D. Tenn. Aug. 17, 2011) (Wiseman, J.) (concluding that the Tennessee Disability Act does not include a reasonable accommodation component)*; Hall v. Wal-Mart Stores East, LP.*, 637 F.Supp.2d 588, 603 (M.D. Tenn. 2009) (Haynes, J.) ("As a matter of law, an employer is not required to provide a reasonable accommodation under the [Tennessee Handicap Act].");[15] *Melman v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:08-cv-1205, 2009 WL 2027120, at *4 (M.D. Tenn. July 9, 2009) (Haynes, J.) (same). *But see Davis v. Ford Motor Credit Co.*, No. 3:04-0790, 2005 WL 2452601, at *7 (M.D. Tenn. Oct. 3, 2005) (Echols, J.) (concluding that Tennessee Handicap Act includes requirement to provide reasonable accommodation); *Calandriello v. Tenn. Processing Ctr., LLC*, No. 3:08-1099, 2009 WL 5170193, at *6 (M.D. Tenn. Dec. 15, 2009) (Echols, J.) (same for Tennessee Disability Act). Therefore, the plaintiff's state law failure to accommodate claim will be dismissed.

---

[14]Although the plaintiff brought his failure to accommodate claim under the THRA, such claims are treated as claims brought under the Tennessee Disability Act, Tenn. Code Ann.§ 8-50-103 (2011). *See Adams v. TRW Automotive U.S. LLC*, No. 3:03-1240, 2005 WL 1862302, at *18 (M.D. Tenn. July 22, 2005) (Trauger, J.) ("claims made under the THRA for employment discrimination based on disability have been treated as equivalent to claims under the [Tennessee Disability Act].").

[15] The Tennessee Disability Act was formerly known as the Tennessee Handicap Act.

The court's prior findings concerning the plaintiff's retaliation claim asserted under the Rehabilitation Act similarly require dismissal of the analogous state law claim. An action brought under the THRA must be filed within one year "after the alleged discriminatory practice ceases." Tenn. Code Ann. § 4-21-311(d) (2011). However, as noted previously, the Amended Complaint contains only two alleged retaliatory acts that occurred within the limitations period, and the continuing violation doctrine cannot help the plaintiff seek recovery for retaliatory conduct that occurred outside that period. *See Booker v. The Boeing Co.*, 188 S.W.3d 639, 647 (Tenn. 2006) (stating that THRA's statute of limitations, which incorporates the continuing violation doctrine, "does not operate to extend the limitations period on discrete acts of discrimination"). As to the two alleged instances of retaliatory conduct that transpired within the limitations period, each of those acts occurred 13 years following the conclusion of the plaintiff's lawsuit in 1998. Again, this gap in time is too significant to reasonably support an inference of retaliation.

**CONCLUSION**

For all of the reasons discussed herein, the defendant's Motion to Dismiss Plaintiff's Amended Complaint (Docket No. 27) is **GRANTED** in part and **DENIED** in part.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge