UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILLIAM R. SOREY,               )<br>                                              )<br>     **Plaintiff,**                          )<br>                                              )<br>                                              )     Case No. 3:11-cv-0859<br>                                              )     **Judge Trauger**<br>**v.**                                        )<br>                                              )<br>YRC INC.,                                )<br>                                              )<br>     **Defendant.**                        )  | |

## MEMORANDUM

Pending before the court is the Defendant YRC Inc.'s Motion for Summary Judgment (Docket No. 48), to which the plaintiff has responded (Docket No. 54), and the defendant has filed a reply (Docket No. 58). For the reasons discussed herein, the defendant's motion will be granted.

## FACTUAL BACKGROUND

The plaintiff was formerly employed as a linehaul driver for the defendant, YRC Inc. ("YRC").[1] In this position, he typically operated a tractor carrying freight along inter-city routes. Beginning in the early 1970s, the plaintiff worked out of YRC's Nashville, Tennessee terminal.[2]

---

[1] Unless otherwise noted, the facts are drawn from the defendant's statement of undisputed facts (Docket No. 50), the plaintiff's responses thereto (Docket No. 57), and related exhibits. The court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009).

[2] The parties dispute precisely when the plaintiff commenced working as a linehaul driver for the defendant. According to YRC, the plaintiff was hired as a regular, full-time linehaul driver in December of 1972. However, during his deposition, the plaintiff testified that his

1

YRC is a less-than-truckload motor carrier that transports freight. Less-than-truckload carriers load and deliver freight that cannot fill an entire truckload by itself. After such freight is loaded, it is transported to a distribution center, combined with other less-than-truckload shipments, and then delivered to its ultimate destination. YRC is the product of a merger between two companies: Yellow Corporation ("Yellow") and Roadway Corporation ("Roadway"). Yellow acquired Roadway in 2003, although the companies were unable to integrate operations until 2009. Up until the merger, the plaintiff was employed by Yellow.

Sometime in 1985, the plaintiff sustained multiple injuries as a result of an automobile accident that occurred while he was driving his car to work. He broke his arm, shoulder, knee, and six ribs. Due to his injuries, the plaintiff remained away from work until June 24, 1998. This reinstatement was preceded by a suit brought by the plaintiff against Yellow, alleging that it unlawfully refused to approve his request to return to work in 1995. After that suit was filed, Yellow extended to the plaintiff an unconditional offer to return to his former position. At the time that it was made, Yellow advised the plaintiff that the offer of reinstatement did not include any offer of special accommodations. The plaintiff accepted Yellow's offer and his prior lawsuit against the company settled. He returned to work without any accommodations.

In 2003, the plaintiff inquired about receiving an accommodation in the form of a tractor containing an air-ride suspension system. He submitted his request by completing an accommodation review form. Although this request was denied, the plaintiff continued to work satisfactorily as a linehaul driver for many years.

---

understanding was that he was hired as a full-time driver in October of 1971. Nonetheless, the parties agree that this factual dispute is immaterial to the issues before the court under the pending motion.

In May of 2007, the plaintiff ruptured a disc in his back. After doing so, he was required to take time off from work for a period of almost 6 months. While the plaintiff explained that he experienced greater difficulty getting into his tractor after he came back to work in November of 2007, it is undisputed that he did not have any medical restrictions or accommodations upon his return.

Shortly thereafter, the plaintiff again took extended time off from work. The plaintiff does not recall the purpose of this leave of absence, which began on December 19, 2007. Upon his return on June 1, 2008, the plaintiff again did not have any medical restrictions or accommodations.

YRC announced the implementation of a safety recognition program (the "Safety Program") in June of 2009. This program, which originated at Roadway before the merger, sought to reward safe drivers. Specifically, the program provided linehaul drivers who had driven three million miles without a preventable accident with their own dedicated tractor to perform their job responsibilities. Almost all of the drivers who earned a dedicated tractor through this program chose a Volvo tractor, which was commonly known to be quieter and roomier than other tractors in the YRC fleet.

Before the merger, Yellow, like Roadway, recognized drivers who safely operated their vehicles. However, unlike Roadway, it did not reward such drivers who reached a certain mileage level with a dedicated tractor. Yellow's program also differed from Roadway's in terms of how miles were awarded. Under Yellow's program, 100,00 miles were awarded to linehaul drivers for each year worked, irrespective of the number of miles actually driven. Roadway's program, on the other hand, tallied the actual number of miles driven each year. According to

YRC, its Safety Program tabulated a driver's actual miles driven to determine eligibility for a dedicated tractor.[3] In August of 2012, YRC discontinued its practice of awarding dedicated tractors as a cost-savings measure.

After viewing an announcement of the Safety Program in a YRC publication in August of 2009, the plaintiff sought out Mike Reidy, a Linehaul Manager, and informed him that he was qualified to obtain a dedicated Volvo tractor under the program. YRC contends that there is no evidence suggesting that the plaintiff requested a Volvo tractor in 2009 for any reason apart from seeking an award under the Safety Program. It is undisputed that, at that time, the plaintiff neither provided any medical documentation evidencing his need for a dedicated Volvo tractor as an accommodation for any disability nor submitted any paperwork to YRC requesting the tractor as such an accommodation. It is further undisputed that the plaintiff never contacted YRC's human resources department to request an accommodation after learning of the Safety Program.

After further investigation by Reidy and Levi Hart, a Safety Coordinator with YRC, the defendant determined that the plaintiff was ineligible to receive a dedicated Volvo tractor under the Safety Program because he had not yet actually driven three million miles. The plaintiff disagrees with this determination and instead contends that he is entitled to a dedicated tractor notwithstanding the fact that he had not actually driven three million miles. Specifically, the plaintiff asserts that he should have been credited one-hundred thousand miles per year during his

---

[3] The plaintiff contends that YRC's actual policy is to award dedicated trucks to employees who have three million miles, even if they were not actually driven. To support his contention, he cites his deposition testimony, wherein he stated that two YRC employees in Nashville received a dedicated truck notwithstanding the fact that they had not actually driven three million miles. However, this dispute is immaterial to the issues before the court under the pending motion.

thirteen-year leave of absence following his 1985 automobile accident. Setting this disagreement aside, the plaintiff does not dispute that YRC's decision to deny him a dedicated Volvo tractor was based solely on his ineligibility under the Safety Program.

Nevertheless, the plaintiff also alleges that he requested a dedicated Volvo tractor as an accommodation for his alleged disability. According to the plaintiff, he made his initial request in March of 2009 and thereafter intermittently requested a dedicated Volvo tractor until February of 2011. The plaintiff asserts that this accommodation is necessary because the Volvo tractor possesses: (1) an air-ride suspension system, which prevents pain and injury to his back; and (2) steps that are easier for him to climb.

Aside from those that are awarded pursuant to its Safety Program, YRC does not provide dedicated linehaul tractors to particular drivers. In addition, it does not assign such tractors to specific terminals or locations because they continuously travel from one terminal to another. While YRC did not award the plaintiff with a dedicated Volvo tractor in 2009 pursuant to its Safety Program, it is undisputed that he has nonetheless been driving Volvo tractors with air-ride suspension on nearly a daily basis for years.[4] On the rare occasion when the plaintiff was assigned a non-Volvo tractor to complete a particular trip, he went to a YRC shop and exchanged it for a Volvo. The plaintiff testified that this arrangement worked well in Nashville. It was also effective in those instances in which the plaintiff was assigned a non-Volvo tractor at a terminal

---

[4] Of the tractors that comprise YRC's fleet, approximately 85% are Volvos, nearly all of which possess air-ride suspension. Of the remaining 15%, most are Sterling tractors, most of which also possess air-ride suspension systems. Indeed, the plaintiff has admitted that almost all of the tractors in YRC's fleet possess air-ride suspension.

5

outside of Nashville. As a result of this arrangement, the plaintiff operated a non-Volvo tractor approximately two to three times per month.

Although the plaintiff alleges that he made intermittent requests for an accommodation after March of 2009, he neither submitted paperwork nor medical documentation to YRC in connection with such requests. While the plaintiff concedes that he failed to submit a formal accommodation request supported by relevant documentation, he nonetheless contends that he requested an accommodation from Leonard Hollingsworth, an Equipment Manager at YRC. To support this assertion, the plaintiff cites portions of Hollingsworth's deposition testimony, wherein he stated that the plaintiff occasionally came to him to exchange a Sterling tractor for a Volvo and told him about his difficulty in navigating the steps of a Sterling.[5]

On February 18, 2011, the plaintiff was involved in another automobile accident when his personal vehicle was rear-ended while resting in a stationary position. The plaintiff suffered injuries to his back, right shoulder, and neck, and has since brought a lawsuit against the driver of the other vehicle. Following the accident, the plaintiff also took a leave of absence from YRC. During this time period, the company has paid all of his wages and benefits earned prior to the commencement of the leave period.

---

[5] As previously noted, one of the plaintiff's stated reasons for allegedly requesting a Volvo tractor as an accommodation is his difficulty in climbing steps. There are two steps on both the Volvo and Sterling tractors. The distance between the ground and the first step on the Volvo and Sterling tractors is 18 inches and 16 inches respectively. The distance between the first and second steps on the Volvo and Sterling tractors is 18 inches. Finally, 14-15 inches separate the second step and the floor of the cab on the Volvos, while 16 inches separate the same points on the Sterling tractors. Thus, the largest distance between any two steps on a Volvo tractor is 18 inches, which must be navigated twice. The largest distance between any two steps on a Sterling tractor is similarly 18 inches, but that distance must only be navigated once.

Despite the injuries he sustained in the February 2011 accident, the plaintiff is still physically capable of performing many activities. He is also able to walk deliberately, although when he is outside of his home, he does so with the assistance of a cane. The plaintiff testified that he engages in hobbies and activities that include performing woodwork, making wood furniture, raising tomatoes, and collecting and operating John Deere tractors.[6] In addition to these activities, the plaintiff also enjoyed bailing hay as recently as 2011.

The plaintiff commenced this action on September 12, 2011, asserting failure to accommodate and retaliation claims pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 *et seq.* (2011). (Docket No. 1.) On November 21, 2011, YRC filed its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the plaintiff's Complaint should be dismissed because all of his claims were time-barred under the applicable statutes of limitation. (Docket No. 17.) The plaintiff responded to the defendant's motion on December 2, 2011. (Docket No. 21.) On the same date, the plaintiff filed a motion seeking leave to amend his Complaint. (Docket No. 22.) In a Memorandum and Order entered on December 14, 2011, the court granted the plaintiff's motion to amend and denied YRC's motion to dismiss as moot. (Docket No. 23.)

YRC moved to dismiss the Amended Complaint on December 19, 2011, renewing its contention that the plaintiff's claims were time-barred. (Docket No. 27.) In a Memorandum

---

[6] With respect to woodwork, the plaintiff testified that, with the assistance of others, he made a train consisting of five cars that spanned approximately 40 feet in length for children and adults to ride in 2012. As for operating John Deere tractors, he testified that he gave people rides on his tractor during a local church community day in May of 2012. The plaintiff also used his tractor in 2012 to help clear trees that were primarily located on his property. Specifically, he sat on his tractor, while his neighbor used a chain to hook each tree that was to be pulled.

Opinion entered on January 6, 2012, the court dismissed the plaintiff's retaliation claim brought pursuant to the Rehabilitation Act and his retaliation and failure to accommodate claims brought under the THRA. (Docket No. 31 at 11-13.) The court also held that the plaintiff's Amended Complaint sufficiently stated a failure to accommodate claim under the Rehabilitation Act pertaining to his requests for a dedicated Volvo tractor, but limited that claim to specific requests made and denied on or after September 12, 2010. (*Id.* at 8.) YRC filed the present motion on September 28, 2012. (Docket No. 48.)

## ANALYSIS

### I. Standard of Review

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a

8

scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## II. The Defendant's Motion

In its motion, YRC contends that summary judgment is appropriate as to the plaintiff's failure to accommodate claim brought pursuant to the Rehabilitation Act because he failed to establish the requisite prima facie case. (Docket No. 49 at 2.) Specifically, YRC asserts that the plaintiff is unable to show that he was disabled at the time that he alleges he sought the requested accommodation and that, in any event, the accommodation was unnecessary. (*Id.*) YRC also contends that, in the event the plaintiff is able to establish his prima facie case, summary judgment should nonetheless be granted because he is unable to establish his entitlement to compensatory and punitive damages. (*Id.*)

The Rehabilitation Act is "designed to assist and protect the rights of the handicapped . . . and prohibits federal agencies, federal contractors, and recipients of federal funds from discriminating against individuals with disabilities." 29 U.S.C. § 701 *et seq.*, *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997). The Act provides in pertinent part:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). To establish a prima facie case of handicap discrimination premised on an employer's failure to accommodate, a plaintiff must demonstrate that: "(1) he is an individual

9

with a handicap . . . ; (2) he is qualified for the position . . . ; (3) the [employer] was aware of his disability; (4) an accommodation was needed, i.e., a causal relationship existed between the disability and the request for accommodation; and (5) the [employer] failed to provide the necessary accommodation." *Gaines*, 107 F.3d at 1175. YRC challenges the plaintiff's ability to establish the first and fourth prongs of the prima facie case.

Before delving into YRC's arguments, it bears emphasizing precisely what accommodation the plaintiff alleges he requested from YRC to no avail. Importantly, the plaintiff does not allege that he requested to merely operate Volvo tractors with air-ride suspension while making trips for the company. Indeed, the plaintiff admits that he operated such tractors on a near daily basis. Instead, he alleges that he requested that YRC provide him with a *dedicated* Volvo tractor with air-ride suspension that was solely assigned for his use.

In order to establish that he is disabled, the plaintiff must present evidence showing "that he suffers from a physical or mental impairment that substantially limits a major life activity." *Curtis v. Humana Military Healthcare Servs., Inc.*, 448 F.App'x 578, 580 (6th Cir. 2011). The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, provides that major life activities include, but are not limited to the following:

> [C]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

42 U.S.C. § 12102(2)(A).[7] YRC contends that the plaintiff was not actually disabled under the ADA because he maintained a number of hobbies that required significant physical activity, his difficulty walking and climbing steps did not constitute a disability under applicable Sixth Circuit precedent, and he performed satisfactory work for a number of years without ever receiving an accommodation.[8] (Docket No. 49 at 12-14.)

However, in making these arguments, YRC substantially relies on precedent that involved alleged discriminatory practices that predated the effective date of the ADA Amendments Act of 2008. Pub. L. No. 110-325, 122 Stat. 3553. That Act, which became effective on January 1, 2009, was a congressional response to a series of Supreme Court decisions beginning with *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999) that "narrowed the broad scope of protection intended to be afforded by the ADA." *Id.* §§ 2, 8. Congress found that *Sutton* and its progeny caused lower courts to incorrectly find "in individual cases that people with a range of substantially limiting impairments are not people with disabilities." *Id.* § 2. Among its purposes, the Act seeks to reinstate a broad scope of protection under the ADA and clarify Congress' intent that the primary object of attention in ADA cases is whether covered entities have complied with their obligations and that courts should refrain from extensively

---

[7] The Rehabilitation Act provides that the standards used to determine whether a defendant is liable for discrimination under the Act are the same as those applied under the ADA. *See* 29 U.S.C. § 794(d). It also provides that, subject to certain exceptions that are inapplicable here, the definition of disability for purposes of an employment discrimination claim is the same as that supplied by the ADA. *See* 29 U.S.C. § 705(20)(B).

[8] YRC also argues that it had no duty to provide an accommodation to the plaintiff if he was disabled by virtue of having a "record of impairment" or otherwise being "regarded as having such an impairment" under the ADA. (Docket No. 49 at 14-16.) In his opposition brief, the plaintiff does not address these arguments at all and thus concedes the point. (*See* Docket No. 54 at 2-4.) Accordingly, the court will limit its discussion to the issue of whether the plaintiff was actually disabled under the ADA.

analyzing the issue of whether an individual's impairment constitutes a disability under the statute. *Id.* Indeed, the ADA now provides that "[t]he definition of disability . . . shall be construed in favor of broad coverage of individuals under this chapter . . . ." 42 U.S.C. § 12102(4)(A).

While the alleged discriminatory conduct at issue here occurred after the effective date of the ADA Amendments Act, neither party has undertaken any substantial effort to analyze the effect of the Act on the present case. Nevertheless, for the purposes of this motion, the court need not determine whether the plaintiff is actually disabled under the current amendments. Indeed, even if the court were to assume that the plaintiff was actually disabled, his claim would nonetheless fail, because he has adduced no evidence showing that he requested a dedicated Volvo tractor as an accommodation on or after September 12, 2010.

Plainly, a discrimination claim premised on a failure to accommodate cannot exist unless a plaintiff actually requests an accommodation. *See Gaines*, 107 F.3d at 1175 (noting that in assessing whether an accommodation is needed, a court is to analyze whether a "causal relationship existed between the disability and the *request* for accommodation") (emphasis added); *Leeds v. Potter*, 249 F.App'x 442, 449 (6th Cir. 2007) ("Thus, not only does a plaintiff have to show that supervisors actually knew of the disability, *but he or she must show that an accommodation was requested* and the employer failed to provide a reasonable accommodation") (emphasis added). As the court has limited the plaintiff's failure to accommodate claim to only those alleged requests for a dedicated Volvo tractor made and denied on or after September 12, 2010, the plaintiff must thus present evidence showing that such requests were actually made.

YRC contends that the plaintiff has failed to make this showing. (Docket No. 49 at 20.) Specifically, it points out that, while the plaintiff requested a dedicated Volvo tractor in 2009, he did so solely as an award under the YRC Safety Program. (*Id.* at 20-21.) Moreover, it notes that there is no evidence in the record showing that, either on or after September 12, 2010, the plaintiff submitted paperwork to YRC requesting an accommodation, provided medical records establishing that he needed a dedicated Volvo tractor, or otherwise approached human resources to request an accommodation. (Docket No. 57 at 13, 20-21.) While the plaintiff concedes that he neither submitted paperwork nor approached human resources, he nonetheless argues that he made accommodation requests for a dedicated Volvo tractor on or after September 12, 2010. (Docket No. 54 at 4; Docket No. 57 at 9, 12-13, 21.)

To support his assertion, the plaintiff relies on deposition testimony given by Leonard Hollingsworth, wherein he stated that the plaintiff occasionally came to him to exchange his non-Volvo tractor for a Volvo. Hollingsworth specifically testified that the plaintiff had mentioned his difficulty in navigating the steps of a Sterling tractor compared to those existing on a Volvo. (Docket No. 55, Exhibit 1 at 9.) However, Hollingsworth's testimony fails to establish precisely when the plaintiff had these conversations, let alone whether they transpired on or after September 12, 2010. More importantly, his testimony does not show that the plaintiff was making requests for a *dedicated* Volvo tractor. Instead, it merely describes the circumstances surrounding the plaintiff's practice, on those rare occasions he was assigned a non-Volvo tractor to complete a particular trip, of exchanging his assigned vehicle for a Volvo at the YRC shop. No reasonable jury could infer from this testimony that these exchanges

13

resembled accommodation requests by the plaintiff for his own Volvo tractor that would be dedicated solely for his use.[9]

Similarly unavailing is the plaintiff's reliance on his own deposition testimony - the cited portions of which only show that, after unsuccessfully seeking a dedicated Volvo tractor as an award under YRC's Safety Program, he commented to a shop foreman that he remained entitled to that award under the program.[10] (Docket No. 57 at 12-13.) The plaintiff's testimony offers no suggestion that his comment regarding the dedicated Volvo in any way resembled a request for an *accommodation* for any alleged medical restrictions he possessed. While the court recognizes that the plaintiff is not required to use magic words such as "accommodation" or "disability," any request for accommodation must "make it clear from the context that it is being made in order to conform with existing medical restrictions." *Leeds*, 249 F.App'x at 449. In the instant case, no reasonable juror could infer from the context surrounding the aforementioned comment that the plaintiff was requesting a dedicated Volvo tractor as an accommodation for any medical restriction.

Because the plaintiff has failed to adduce any evidence showing that, either on or after September 12, 2010, he requested a dedicated Volvo tractor as an accommodation for his alleged disability, he cannot establish a prima facie case of discrimination premised on a failure to

---

[9] Moreover, even if the court were to assume that these exchanges somehow constituted an accommodation request for a dedicated Volvo tractor, the plaintiff has offered no evidence showing that Hollingsworth was his supervisor and had authority to act upon any alleged accommodation request for a dedicated tractor. *See Leeds*, 249 F.App'x at 449.

[10] Earlier in his deposition, the plaintiff also testified that, after his award request for a dedicated Volvo tractor was denied, he continued to comment to other unspecified individuals that he remained entitled to such a vehicle under YRC's Safety Program. (Docket No. 56, Exhibit 1 at 37.)

accommodate. As the plaintiff has failed to create a genuine dispute of material fact as to this issue, summary judgment will be granted to YRC.[11]

## **CONCLUSION**

For all of the reasons discussed herein, the Defendant YRC Inc.'s Motion for Summary Judgment (Docket No. 48) will be **GRANTED**.

An appropriate order will enter.

							_____
							ALETA A. TRAUGER
							United States District Judge

---

[11] Having determined that the plaintiff has failed to create a genuine dispute of material fact concerning whether he requested a dedicated Volvo tractor as an accommodation within the applicable time-frame, the court need not address YRC's remaining arguments concerning whether such an accommodation was necessary or, alternatively, if the plaintiff is entitled to compensatory or punitive damages.